UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


DALE L. WILLIAMS,

                    Petitioner,

vs.                                        Case No. 3:17-cv-204-J-39JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,[1]

                    Respondents.

_____

**ORDER**

**I.  INTRODUCTION**

Petitioner Dale L. Williams initiated this case by filing a

pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by

a Person in State Custody (Petition) (Doc. 1).[2]  He challenges

several 2010 Duval County convictions through four grounds.[3]

Respondents filed an Answer in Response to Order to Show Cause

_____

[1] The **Clerk** shall correct the docket from Respondent, State of
Florida, to Respondent, Secretary, Florida Department of
Corrections.

[2] The Court will reference the page numbers assigned by the
electronic docketing system where applicable.

[3] Petitioner references convictions for two counts of
depriving an officer of means of protection or communication, two
counts of resisting an officer with violence, possession of less
than twenty grams of cannabis, and one count of loitering or
prowling.

(Response) (Doc. 15).[4]  Petitioner filed a Reply (Doc. 18).  <u>See</u> Order (Doc. 5).

## II.  CLAIMS

Four grounds for habeas relief are raised in the Petition: (1) prosecutorial misconduct; (2) an illegal stop and search; (3) ineffective assistance of counsel; and (4) insufficiency of the evidence.  Petition at 5, 7, 8, 10.

## III.  EVIDENTIARY HEARING

No evidentiary hearing will be conducted as this Court is not required to hold an evidentiary hearing if the record refutes the asserted factual allegations or otherwise precludes habeas relief.  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).  Petitioner has not met the burden to establish the need for a federal evidentiary hearing.  <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012).  In this case, the pertinent facts are fully developed in the record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004).

---

[4] The Court hereinafter refers to the exhibits in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the particular document will be referenced.

# IV.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254; <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 1432 (2017).  "AEDPA limits the scope of federal habeas review of state court judgments[.]" <u>Pittman v. Sec'y, Fla. Dep't of Corr.</u>, 871 F.3d 1231, 1243 (11th Cir. 2017), <u>cert</u>. <u>denied</u>, No. 17-9015, 2018 WL 2322632 (Oct. 1, 2018).  This narrow scope of review under AEDPA provides for habeas relief only if there are extreme malfunctions, certainly not to be used as a means to correct state court errors.  <u>Ledford</u>, 818 F.3d at 642 (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).  "Under AEDPA, error is not enough; even clear error is not enough." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 900 F.3d 1330, 1344 (11th Cir. 2018) (citation omitted).  Indeed,  federal courts may grant habeas relief:

> only when the adjudication of a federal constitutional claim "on the merits in State court proceedings" either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This narrow evaluation is highly deferential, for a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."

Morrow v. Warden, 886 F.3d 1138, 1146-47 (11th Cir. 2018) (alteration adopted) (internal quotation marks omitted) (quoting Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)). The decision of a state court is "contrary to" federal law only if it "contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts." Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1355 (11th Cir. 2009) (citation and internal quotation marks omitted). The decision of a state court "involves an unreasonable application of federal law if it identifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, unreasonably extends the principle to a new context where it should not apply, or unreasonably refuses to extend it to a new context where it should apply." Id. (citation and internal quotation marks omitted). "The question ... is not whether a federal court believes the state court's determination was correct but whether that determination was unreasonable—a substantially higher threshold." Id. (citation and internal quotation marks omitted).

Wilson v. Warden, Ga. Diagnostic Prison, 898 F.3d 1314, 1321 (11th Cir. 2018).

This Court will not "flyspeck the state court order or grade it." Id. at 1345. Instead, the Court is charged with reviewing the conclusions of the state court, deferring to the state court decisions, and granting habeas relief only if the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of Supreme Court precedent. "We also must presume that 'a determination of a factual issue made by a

State court [is[ correct,' and the petitioner 'ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." <u>Morrow v. Warden</u>, 886 F.3d 1138, 1147 (11th Cir. 2018). Additionally, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." <u>Pope v. Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003)), <u>cert</u>. <u>denied</u>, 568 U.S. 1233 (2013).

In this regard:

> "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to 'train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims.'" <u>Wilson v. Sellers</u>, --- U.S. ----, 138 S.Ct. 1188, 1191-92, --- L.Ed.2d ---- (2018) (quoting <u>Hittson v. Chatman</u>, --- U.S. ----, 135 S.Ct. 2126, 2126, 192 L.Ed.2d 887 (2015) (Ginsberg, J., concurring in denial of certiorari) ). The Supreme Court recently held that, when the relevant state court decision is not accompanied by a reasoned opinion explaining why relief was denied, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." <u>Id</u>. at 1192. "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision." <u>Id</u>.

Johnson v. Sec'y, Dep't of Corr., 737 F. App'x 438, 441 (11th Cir. 2018) (per curiam).

Bearing in mind this guidance from the Supreme Court, this Court undertakes its review of Petitioner's four claims. If the last state court to decide a federal claim provides an explanation for its merits-based decision in a reasoned opinion, this Court simply reviews the specific reasons given by the state court and defers to those reasons, if they are reasonable. On the other hand, if the relevant state-court decision is not accompanied by a reasoned opinion, simply stating affirmed or denied, this Court should "look through" the unexplained decision to the last related state-court decision that provides relevant rationale. This Court presumes the unexplained decision adopted the same reasoning as the lower court; however, the presumption is not irrebutable, as strong evidence may refute the presumption. See Kernan v. Hinojosa, 136 S.Ct. 1603, 1606 (2016) (per curiam). Thus, the state may rebut the presumption by showing the higher state court relied or most likely relied on different grounds than the lower state court, "such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018).

Although the § 2254(d) standard is difficult to meet, the standard is meant to be difficult. Rimmer v. Sec'y, Fla. Dep't of Corr., 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling

must be objectively unreasonable, not merely wrong or even clear error), cert. denied, 138 S.Ct. 2624 (2018). When applying the stringent AEDPA standard, state court decisions must be given the benefit of the doubt. Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1107 (11th Cir. 2012) (quotation and citations omitted), cert. denied, 568 U.S. 1237 (2013).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). A counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690.

In making its determination as to whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in exercise of reasonable professional judgment." Id. at 690. When analyzing a claim of ineffective assistance of counsel, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, 105 (2011). And importantly, with regard to the

establishment of prejudice requirement, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Of note, some conceivable effect on the outcome does not constitute a reasonable probability. Id. at 693.

Finally, in order to prevail on a claim of ineffective assistance of counsel, both parts of the Strickland test must be satisfied. Bester v. Warden, Att'y Gen. of the State of Ala., 836 F.3d 1331, 1337 (11th Cir. 2016) (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)), cert. denied, 137 S.Ct. 819 (2017). Indeed, failure to demonstrate either prong is fatal, making it unnecessary to consider the other. Id.

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In his first ground for relief, Petitioner raises a claim of prosecutorial misconduct. Petitioner, in his supporting facts for this ground states:

> (1) The prosecutor staged this vindictive prosecution relying solely on the fraudulent testimonies of Officer's [sic] Troy Yorton and G. W. Simpson known to the prosecuting authorities to be fraudulent. (2) The prosecutor failed to present a prima facie case of the charges filed, no evidence of violence[,] no evidence of the injury Officer Troy Yorton claims he was treated eight week[s] for[.]"

Petition at 5.

In this ground, Petitioner raises a claim of prosecutorial misconduct for eliciting false statements from Officers Yorton and Simpson. Petitioner exhausted his claim by raising it in a post conviction motion. The trial court addressed the claim as follows:

> In his second subclaim, Defendant asserts that the State committed a <u>Giglio[v. United States</u>, 405 U.S. 150 (1972)] violation when it knowingly presented the perjured testimonies by Officers Yorton and Simpson. Defendant specifically argues that the officers committed perjury when they testified Defendant snatched their radios and Officer Yorton was injured during the encounter. In support of his argument, Defendant asserts the testimonies must have been false or else the State would have presented corroborative testimony in the form of Officer Yorton's medical records, workers' compensation documents, and police dispatch logs. Because the State did not present such evidence, Defendant speculates, it either does not exist or it does not corroborate the officers' testimonies. Thus Defendant argues that the officer's testimony must be false, and the State's knowing presentation of their testimony violates <u>Giglio</u>.

Ex. O at 384 (footnote omitted).

The trial court found Petitioner simply restated his speculative claim upon amendment of this ground. <u>Id</u>. In rejecting this claim, the court found no entitlement to post conviction relief "based on speculation or possibility." <u>Id</u>. at 384-85 (citation omitted).

The record shows the following. Officer Simpson testified at trial that he observed Petitioner grab Officer Yorton's hand and pull it down when Officer Yorton attempted to complete his call for

help through his radio.  Ex. B at 58.  Officer Simpson further attested that Officer Yorton was only able to reference First Street, and was unable to provide the cross street, which would have been Market Street.  Id.  Officer Simpson testified that, as a result of this incomplete communication, the police car responding to the call for assistance passed by them on First Street.  Id. at 59.

Officer Simpson also testified that when he tried to use his radio, Petitioner "was able to get his hand up and grab my mic [sic] to pull it off."  Id. at 60.  Officer Simpson said, when the this occurred, the microphone shot back behind him.  Id. at 61.

Officer Troy Yorton testified that when he attempted to call for backup, Petitioner reached up and grabbed Yorton's hand and pulled it away from the radio.  Id. at 124.  Officer Yorton said he was able to get out his call sign and a request for backup to East First Street, but was unable to announce the cross street due to Petitioner's actions.  Id.  Officer Yorton testified the backup car went by the officers' position.  Id. at 125.  He testified that after the police car went by, Officer Simpson reached for his radio, and Petitioner reached up and grabbed the radio and yanked it off.  Id. at 125-26.  Officer Yorton testified the radio sprang back and flew through the air.  Id. at 126.

With respect to his injuries, Officer Yorton testified he suffered an injury to his left wrist.  Id. at 130.  At trial, Officer Yorton wore a brace on his left hand.  Id.  He stated he

had been treated for the injury for about eight weeks.[5] Id. at 136.

Petitioner, on the other hand, testified there was no struggle and he never reached for the officers' radios. Ex. C at 219-21. Petitioner said he complied with the officers' directives, and they simply grabbed him and took him face down onto the concrete. Id. at 219. He attested the officers simply picked him up and arrested him. Id.

On post conviction review, the trial court did not find the officers' trial testimony false or misleading. Instead, the court found Petitioner's contention speculative, or a mere possibility. Ex. O at 384-85. Petitioner has not established that the officers' statements were false. Petitioner is not entitled to habeas relief on ground one as Petitioner's claim that the prosecutor knowingly used perjured testimony is unsubstantiated, speculative, and due to be denied.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. AEDPA deference will be given to the last adjudication on the merits provided by the 1st DCA in affirming the decision of the circuit court. Ex. R. Its decision is not inconsistent with Supreme Court precedent. The Court finds that the state court's adjudication of

_____

[5] The trial court did not order restitution as Officer Yorton's injury was covered by Worker's Compensation. Ex. A at 130, Order Denying Restitution.

this claim is not contrary to or an unreasonable application of Supreme Court law, or based on an unreasonable determination of the facts.

To the extent Petitioner is attempting to raise a claim that there has been a Giglio[v. United States, 405 U.S. 150 (1972)] violation, he is not entitled to relief. There is a Giglio violation "when the prosecution solicits or fails to correct false or perjured testimony" and this testimony could "in any reasonable likelihood have affected the judgment of the jury." Rodriquez v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1277, 1302 (2014) (citing Giglio, 405 U.S. at 153-54 (quoting Napue v. Illinois, 360 U.S. 246, 271 (1959))), cert. denied, 135 S.Ct. 1707 (2015). The state commits a violation of Giglio if it uses perjured testimony and the prosecutor knew or should have known of the perjury. Id. (citation omitted).

Thus, "[i]t is by now almost axiomatic that, '[i]n order to prevail on a Giglio claim, a petitioner must establish [1] that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and [2] that the falsehood was material.'" Raleigh v. Sec'y, Fla. Dep't of Corr., 827 F.3d 938, 949 (11th Cir. 2016) (citations omitted), cert. denied, 137 S.Ct. 2160 (2017). False testimony is material if there is any reasonable likelihood that the falsehood could have affected the result. Id. (citation omitted). But, there is an additional factor which this Court must take into consideration

when reviewing a <u>Giglio</u> claim on habeas review; Petitioner must satisfy the <u>Brecht</u>[6] standard.  Therefore, if a petitioner fails to demonstrate the error had a substantial and injurious effect on the outcome of the trial, he would not be entitled to habeas relief. <u>Rodriquez</u>, 756 F.3d at 1302 (citing <u>Guzman v. Sec'y, Dep't of Corr.</u>, 663 F.3d 1336, 1355-56 (11th Cir. 2011)).

In this case, Petitioner has failed to establish that the prosecutor knowingly used perjured testimony.  The trial court found the claim to be both insufficient and speculative.  Ex. O at 384-85.  The First District Court of Appeal affirmed this decision.  Ex. R.  It follows that pursuant to 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas relief based on his <u>Giglio</u> claim unless he demonstrates that the state court's adjudication of the claim was contrary to, or an unreasonable application of <u>Giglio</u>.  He has failed to do so.

Deference under AEDPA should be given to the state court's decision.  Petitioner raised the issue in his Rule 3.850 motion and the appellate court affirmed.  The state court's adjudication of this claim is not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to habeas relief on ground one.

---

[6] <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

## B. Ground Two

Petitioner's second ground for relief is a claim of an illegal stop and search. Petition at 5. To the extent Petitioner raises a Fourth Amendment claim in ground two, the Court should inquire as to whether the Fourth Amendment claim is barred. Importantly, if the state affords a defendant a full and fair opportunity to litigate the validity of a search or seizure, "a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Hearn v. Florida, 326 F. App'x 519, 521 (11th Cir. 2009) (per curiam) (quoting Stone v. Powell, 428 U.S. 465, 494 (1976)). The courts have interpreted the phrase "opportunity for full and fair litigation" to mean just that: an opportunity.[7] Lawhorn v. Allen, 519 F.3d 1272, 1287 (11th Cir. 2008) (citation omitted), cert. denied, 562 U.S. 907 (2010). As such, "if state procedures afford the defendant in a criminal case the opportunity to litigate whether evidence obtained in violation of the fourth amendment should be excluded, and if that opportunity to litigate fourth amendment issues is 'full and fair' . . ., then Stone v. Powell precludes federal habeas corpus consideration of those issues **whether or not the defendant avails himself of that**

---

[7] An opportunity in this context has been described as one evidentiary hearing in the trial court and the availability of a meaningful appeal. Bradley v. Nagle, 212 F.3d 559, 565 (11th Cir. 2000) (quotation and citation omitted), cert. denied, 531 U.S. 1128 (2001).

**opportunity**."  Caver v. State of Ala., 577 F.2d 1188, 1193 (5th Cir. 1978) (emphasis added).[8]

The Court concludes ground two is not cognizable in a federal habeas corpus proceeding because Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue in the state courts but did not avail himself of that opportunity by failing to file a motion to suppress.  Ex. B at 156.  Notably, if Petitioner had availed himself of the opportunity, the trial court would have had the occasion to review the motion, conduct an evidentiary hearing, and make explicit findings on matters essential to the Fourth Amendment claim.  If filed and denied, Petitioner could have appealed the decision to the 1st DCA.

Upon review, this claim is barred pursuant to Stone and its progeny because Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue but failed to avail himself of that opportunity.  Therefore, ground two, the Fourth Amendment claim, is due to be denied.

Alternatively, to the extent that Petitioner exhausted his claim raised in ground two, the claim is due to be denied.  There are two prerequisites to a federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." <u>Upshaw v. Singletary</u>, 70 F.3d 576, 578-79 (11th Cir. 1995) (citations omitted).

Petitioner, in support of ground two, states: "(1) [t]he stop and search of the defendant was illegal[;] there was no probable cause[;] (2) the testimonies given by Officers Troy Yorton and G. W. Simpson were fraudulent[;] (3) this arrest was motivated by racial profiling[;] (4) ther[e] is no evidence presented of the charges filed[.]" Petition at 7.

The trial court rejected Petitioner's claim as procedurally barred:

> Defendant's claim is procedurally barred for two reasons. First, Defendant raised these arguments in a Motion for a New Trial. (Ex. Q.) The trial court denied the motion on the merits; and the First DCA affirmed on direct appeal. (Exs. R; B.) Defendant is therefore procedurally barred, under the doctrine of collateral estoppel, from relitigating the same issue. <u>See</u> <u>McBride</u>, 848 So. 2d at 287, 290. Second, to the extent Defendant appears to be attempting to challenge the sufficiency of the evidence against him, a defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief. <u>Betts v. State</u>, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); <u>Jackson v. State</u>, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994). Accordingly, Defendant's second claim is denied.

Ex. O at 381. The First District Court of Appeal (1st DCA) per curiam affirmed. Ex. R.

The record demonstrates at trial, defense counsel moved for a judgment of acquittal. Ex. B at 154. He argued Petitioner was not prowling and loitering. _Id_. at 154-55. Defense counsel also asserted the officers did not have enough reason to arrest Petitioner and were without probable cause to arrest Petitioner. _Id_. at 156. Additionally, defense counsel argued the evidence should be suppressed and the case dismissed. _Id_. The court inquired as to whether a motion to suppress had been filed, and defense counsel responded in the negative. _Id_. Finally, defense counsel argued the state failed to present any evidence of violence. _Id_.

The prosecutor countered the defense argument by noting that Petitioner was loitering at a closed business, he failed to dispel the officers' concerns by his responses to their inquiries, Petitioner resisted with violence, and the officers certainly had probable cause to detain and arrest Petitioner once the officers saw Petitioner urinating in public. _Id_. at 157-59. The prosecutor also reminded the court that the officers' testimony included statements concerning Petitioner's actions which prevented the officers from means of protection or communication. _Id_. at 159-60. The trial court denied the motion for judgment of acquittal and the renewed motion for judgment of acquittal. _Id_. 160, 222.

The record shows Petitioner filed a Motion for New Trial raising four grounds: (1) the court erred in not granting the motion for judgment of acquittal at the close of the state's case;

(2) the court erred in not granting the motion for judgment of acquittal made at the close of all of the evidence; (3) the verdict is contrary to the weight of the evidence; and (4) the verdict is contrary to law. Ex. A at 101. Defense counsel renewed the arguments made in support of the motion for judgment of acquittal, and the court denied the motion for new trial. Id. at 103; 150.

The 1st DCA affirmed the conviction on direct appeal. Ex. G. The mandate issued on February 24, 2012. Ex. H.

To the extent the claim raised in ground two is properly before the Court, AEDPA deference is due. The state court's decision is not inconsistent with Supreme Court precedent. Its adjudication is not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to habeas relief.

The trial court denied the claim of lack of reasonable suspicion to justify the stop raised in the Rule 3.850 motion. The court explained:

> The record shows that the State elicited the testimony from the officers in the context of justifying the investigatory stop, which they executed after witnessing Defendant peeking through the windows of the Mary Singleton Retirement Center after hours and urinating on the lawn. (Ex. S at 36-50, 109-115.) Whether the criminal activity took place in a high-crime area was a factor in the totality-of-the-circumstances analysis to determine whether reasonable suspicion to initiate a stop, and the State properly elicited testimony on direct examination. (Ex. S at

32-99, 101-150).  Thus, Defendant's argument
is without merit.

. . . .

**Moreover, the officers did testify that they
witnessed Defendant urinate in public, which
gave them probable cause for arrest** (Ex. S at
40-50, 111-12.)

Ex. O at 385-86 (emphasis added).  The 1st DCA affirmed the

decision to deny post conviction relief.  Ex. R.

The trial court rejected Petitioner's claim.  The record shows

the 1st DCA affirmed the decision of the trial court in denying

this ground.  Under <u>Wilson</u>, this Court assumes that the 1st DCA

adopted the reasoning of the trial court.  There has been no

attempt to rebut this presumption.  <u>Wilson</u>, 138 S.Ct. at 1192.

After due consideration, the Court finds the state court did not

unreasonably apply clearly established federal law, as determined

by the United States Supreme Court.  Consequently, AEDPA deference

is warranted.  The Court concludes that the state court's

adjudication of this claim is not contrary to or an unreasonable

application of federal law, or based on an unreasonable

determination of the facts.  Ground two is due to be denied as

Petitioner is not entitled to habeas relief.

## C.  Ground Three

In his third ground, Petitioner raises a claim of ineffective

assistance of trial counsel:

(1) Counsel did not know the case law
regarding the improprieties in the state's
evidence and argument[;] (2) counsel failed to

> perform depositions[;] (3) counsel was
> ineffective in failing to investigate and
> present exculpatory evidence of officers['']
> claims; (4) avail[a]ble evidence violated even
> minimum pre-Strickland standard of evidence[.]

Petition at 8.

In their response, Respondents succinctly re-stated the claim: "Petitioner argues that the trial court erred in denying his claim that trial counsel was ineffective for failing to know the law regarding the improprieties in the State's evidence, failing to perform depositions, and failing to investigate and present exculpatory evidence of the officer's [sic] claims." Response at 22. Respondents admit Petitioner exhausted his state court remedies. Id. They assert, however, that Petitioner is unable to establish that the state court decision denying this ground was contrary to or an unreasonable application of federal law. Id. at 23.

With respect to Petitioner's claim that counsel was ineffective for failing to know the law regarding the improprieties in the state's evidence, the trial court addressed the claim and found it to be without merit:

> In claim six, Defendant contends that
> counsel was ineffective for failing to object
> to the State's prosecutorial misconduct as
> alleged in claim three. Defendant asserts,
> but for counsel's error, he would have
> obtained relevant, material evidence to prove
> that the officers gave false testimony, thus
> creating a reasonable probability of a
> different outcome at trial.

This Court finds all three subclaims of
claim three to be without merit. Therefore,
counsel cannot be ineffective for failing to
raise nonmeritorious issues. <u>Lugo v. State</u>, 2
So. 3d 1, 21 (Fla. 2008); <u>Parker v. State</u>, 611
So. 2d 1224, 1227 (Fla. 1992). Accordingly,
Defendant's sixth ground for relief is denied.

Ex. O at 388.

Petitioner also claimed his counsel was ineffective for
failing to depose the two officers. Petitioner contends, had
counsel taken depositions of the officers, counsel would have
unearthed relevant and material evidence needed to reveal the
falsity of the officers' testimonies, leading to its exclusion and
a reasonable probability of a different outcome at trial. The
trial court addressed this ground, finding it insufficiently
supported.

The court opined:

"When a failure to depose is alleged as
part of an ineffective assistance of counsel
claim, the appellant must specifically set
forth the harm from the alleged omission,
identifying 'a specific evidentiary matter to
which the failure to depose witnesses would
relate.'" <u>Haq v. State</u>, 997 So.2d 1284, 1285-
86 (Fla. 4th DCA 2009) (citing <u>Davis v. State</u>,
928 So. 2d 1089, 1117 (Fla. 2005)[)]. In his
Third Amended Motion, Defendant fails to
specify what relevant and material evidence
would be discovered through depositions with
the officers. Moreover, Defendant has not
established that the officers had information
that was unknown to defense counsel before
trial. Furthermore, the Arrest and Booking
Report sets forth the officers' version of the
facts, and the officers' testimonies at trial
corroborate their version. (Exs. S at 33-153;
T.) Therefore, counsel did know the officers'
version of the facts prior to trial. However,

- 21 -

> Defendant claims the Arrest and Booking report
> and the trial testimony were false and that
> deposition testimony would have proven this
> falsity.
>
> Defendant's allegation, that the
> officers' deposition testimony would have
> contradicted both the earlier Arrest and
> Booking Report and the later trial testimony
> is speculative and conclusory. On the January
> 21, 2016, Order Granting Leave to Amend, this
> Court found Defendant's claim was insufficient
> because Defendant failed to specify what
> relevant and material evidence would have been
> discovered through such depositions. In his
> Fifth Amended Motion, Defendant simply
> restates his speculative and conclusory
> claims. Postconviction relief cannot be based
> on speculation or possibility. <u>Valle</u>,[9] 70
> So. 3d at [sic] (citing <u>Maharaj</u>, 778 So. 2d at
> [sic]. Furthermore, Defendant "bears the
> burden of establishing a prima facie case
> based upon a legally valid claim. Mere
> conclusory allegations are not sufficient to
> meet this burden." <u>Freeman</u>,[10] 761 So. 2d at
> 1061. Accordingly, claim five is denied.

Ex. O at 387-88.

Petitioner also claims counsel was ineffective for failure to

investigate and present exculpatory evidence of the officers'

claims and contends the available evidence was insufficient to

support the convictions.[11] The trial court found the claim that

---

[9] <u>Valle v. State</u>, 70 So. 3d 530, 550 (Fla. 2011) (per curiam)
(citing <u>Maharaj v. State</u>, 778 So. 2d 944, 951 (Fla. 2000)), <u>cert</u>.
<u>denied</u>, 564 U.S. 1067 (2011).

[10] <u>Freeman v. State</u>, 761 So. 2d 1055 (2000).

[11] The Court will address the sufficiency of the evidence claim
when addressing ground four of the Petition.

counsel was ineffective for failure to obtain exculpatory evidence non-meritorious:

> In claim four, Defendant contends, but for counsel's failure to obtain relevant material evidence in the form of medical records, Workers' Compensation documents, and police dispatch/call logs, there is a reasonable probability that the outcome of the trial would have been different. Defendant states this evidence would have proven the falsity of the officers' testimonies for the same reasons set forth in the first subclaim of claim three.
>
> On January 21, 2016, this Court issued its Order Granting Defendant Leave to Amend, finding Defendant's claim speculative and insufficient, and granting Defendant sixty days to amend his claim. In response, Defendant filed his Fifth Amended Motion, in which he simply restates his speculative claims. Postconviction relief cannot be based on speculation or possibility. <u>Valle v. State</u>, 70 So. 3d 530, 550 (Fla. 2011) (citing <u>Maharaj v. State</u>, 778 So. 2d 944, 951 (Fla. 2000). Accordingly, claim four is denied.

Ex. O at 386-87.

Before addressing Petitioner's claims of ineffective assistance of counsel, the trial court fully set forth the two-pronged <u>Strickland</u> standard of review. Ex. O at 379-80. Since the trial court found no prosecutorial misconduct in the case, Petitioner will not prevail on a claim that counsel was ineffective for failing to know the case law regarding the improprieties of the state's case and for failing to object to those improprieties. Defense counsel will not be deemed ineffective for failing to raise a non-meritorious issue.

Petitioner failed to specify what relevant and material evidence counsel could have discovered through depositions. Indeed, Petitioner primarily relies on his contention that the officers provided false testimony at trial. The Court notes, however, Officer Yorton, the reporting officer, shortly after the offenses were committed, provided relevant and important details of the offenses in the Arrest and Booking Report, and he attested to these same events at trial. Ex. A, Arrest and Booking Report.

To the extent Petitioner is claiming counsel's performance was deficient for failing to obtain medical, Workman's Compensation and call log records, the Court is not convinced that such information would have had any impact on the disposition of the case. It mattered not whether an officer suffered injury during the incident. It is not one of the elements of the crime of resisting an officer with violence. Also, the call logs would not have provided the details of what was occurring at the scene of the offense, including the officers struggle to arrest Petitioner and Petitioner's actions with regard to attempting to prevent the officers of means of protection or communication, all attested to by the officers at trial. The call logs may have included Officer Yorton's brief radio communication, but again, the elements of the offense were supported by the testimony of the officers. As noted by Respondents, "[m]edical records, workers compensation records and dispatch logs would not have had any bearing on [the officers']

testimony." Response at 29. As such, trial counsel was not ineffective for failing to obtain those records.

Petitioner exhausted his state court remedies by appealing the denial of his Rule 3.850 motion. The 1st DCA affirmed the decision of the trial court without opinion. Ex. R. Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

When considering the claim of ineffective assistance of counsel, this Court must try to eliminate the distorting effects of hindsight, as counseled to do so in <u>Strickland</u>, 466 U.S. at 689. Given due consideration, the Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground three is due to be denied.

### D. Ground Four

In his fourth ground for relief, Petitioner raises a claim of insufficiency of the evidence. Petition at 10. Under supporting facts,[12] he states:

---

[12] Of import, by the time Petitioner filed his federal Petition, he had completed serving the sentences for the two misdemeanor counts for possession of cannabis and loitering or prowling; therefore, he is not in custody on those offenses and may

> (1) Evidence was constitutional[l]y
> insufficient to sustain jury verdict of
> guilty[;] (2) only evidence presented was
> circumstantial the fraudulent testimonies of
> Officer's [sic] Troy Yorton and G. W. Simpson
> that were staged by the prosecution[;] (3) no
> evidence of injury Officer Troy Yorton claims
> to have received eight weeks of treatment for,
> no evidence of depriving officer of
> communication[.]

Id.

Of import, a Petitioner may not challenge the sufficiency of the evidence through a Rule 3.850 motion. <u>Betts v. State</u>, 792 So. 2d 589, 590 (Fla. 1st DCA 2001). Such a claim should be raised on direct appeal. As such, the trial court found this claim procedurally barred. Ex. O at 381. The 1st DCA affirmed this decision. Ex. R.

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's
> conviction and sentence are guided by rules
> designed to ensure that state-court judgments
> are accorded the finality and respect
> necessary to preserve the integrity of legal
> proceedings within our system of federalism.
> These rules include the doctrine of procedural
> default, under which a federal court will not
> review the merits of claims, including

---

not challenge them in this proceeding. <u>See</u> 28 U.S.C. § 2241(c)(3) & § 2254(a) (requiring that persons seeking habeas relief must be in custody in violation of the Constitution or laws or treaties of the United States). Thus, since the misdemeanor sentences were fully expired at the time of the filing of the Petition, Petitioner is not in custody on those offenses. Consequently, the Court will limits its review of the claim of insufficiency of the evidence to the two felony counts of depriving an officer of means of protection or communication and two felony counts of resisting an officer with violence.

> constitutional claims, that a state court
> declined to hear because the prisoner failed
> to abide by a state procedural rule. <u>See</u>,
> <u>e.g.</u>, <u>Coleman</u>, <u>supra</u>, at 747–748, 111 S.Ct.
> 2546; <u>Sykes</u>, <u>supra</u>, at 84–85, 97 S.Ct. 2497. A
> state court's invocation of a procedural rule
> to deny a prisoner's claims precludes federal
> review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker</u>
> <u>v. Martin</u>, 562 U.S. ––––, ––––, 131 S.Ct.
> 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard</u>
> <u>v. Kindler</u>, 558 U.S. ––––, ––––, 130 S.Ct.
> 612, 617–618, 175 L.Ed.2d 417 (2009). The
> doctrine barring procedurally defaulted claims
> from being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9–10 (2012).

Apparently, Petitioner is contending that he exhausted this claim by raising it in his Rule 3.850 motion. This Court is not convinced by this argument. After a thorough review of the record before the Court, the Court concludes Petitioner failed to properly exhaust the claim of insufficiency of the evidence in the state courts because he did not present the claim in a procedurally correct manner by raising it on direct appeal. <u>See</u> <u>Upshaw</u>, 70 F.3d at 578-79. Since he did not present his claim to the state courts in a procedurally correct manner, the ground is procedurally barred. Petitioner has failed to show cause, and he does not meet the prejudice or manifest injustice exceptions. Although a petitioner may obtain review of the merits of a procedurally barred

claim if he satisfies the actual innocence "gateway" established in
Schlup v. Delo, 513 U.S. 298 (1995), Petitioner has not done so.
The gateway is meant to prevent a constitutional error at trial
from causing a miscarriage of justice and "'the conviction of one
who is actually innocent of the crime.'" Kuenzel v. Comm'r, Ala.
Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam)
(quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004
(2013). The fundamental miscarriage of justice exception is only
available in extraordinary cases upon a showing of "'actual'
innocence" rather than mere "'legal' innocence." Johnson v. Ala.,
256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert.
denied, 535 U.S. 926 (2002). With respect to this unexhausted
ground, Petitioner has failed to identify any fact warranting the
application of the fundamental miscarriage of justice exception.
Therefore, the Court finds ground four procedurally barred.

Alternatively, to the extend Petitioner is asserting a due
process violation pursuant to Jackson v. Virginia, 443 U.S. 307
(1979), this claim has no merit. The Due Process Clause of the
Fourteenth Amendment requires the state to prove beyond a
reasonable doubt each element of the offense charged. Thompson v.
Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v.
Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125
(1998). "[T]his court must presume that conflicting inferences to
be drawn from the evidence were resolved by the jury in favor of
the State." Thompson, 118 F.3d at 1448 (citing Machin v.

<u>Wainwright</u>, 758 F.2d 1431, 1435 (11th Cir. 1985)).  The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt.  <u>Thompson</u>, 118 F.3d at 1448.

In his post conviction motion, Petitioner recognizes, "[t]his case was a credibility contest between the police officers and the defendant[.]"  Ex. O at 247.  Petitioner testified at trial, and the jury heard his testimony, including the fact that he is a convicted felon.  The jury made its credibility determination, and found the prosecution's witnesses more credible, and the state's evidence persuasive, beyond a reasonable doubt.  Indeed, the jury found Petitioner guilty of all of the charged offenses.

"When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence."  <u>Johnson v. Ala.</u>, 256 F.3d at 1172 (citations omitted).

As explained by the Supreme Court,

> <u>Jackson</u> requires a reviewing court to review the evidence "in the light most favorable to the prosecution." 443 U.S., at 319, 99 S.Ct. 2781. Expressed more fully, this means a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in

favor of the prosecution, and must defer to that resolution." <u>Id</u>., at 326, 99 S.Ct. 2781; <u>see also</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("The <u>Jackson</u> standard ... looks to whether there is sufficient evidence which, if credited, could support the conviction").

<u>McDaniel v. Brown</u>, 558 U.S. 120, 133 (2010) (per curiam).

Upon review, the court charged the jury:

> As to Count I, before you can find the defendant guilty of depriving an officer of means of protection or communication, the State must prove the following three elements beyond a reasonable doubt: One, Dale L. Williams deprived G. W. Simpson of his radio, a means to defend himself or summons assistance; two, G. W. Simpson was a law enforcement officer; three, Dale. L. Williams knew G. W. Simpson was a law enforcement officer.

Ex. C at 267.

The record demonstrates Officer Simpson testified he, a patrol officer employed by the Jacksonville Sheriff's Office (JSO), was in a patrol car with Officer Yorton on July 9, 2010. Ex. B at 33-35. The officers pulled into the parking lot of a closed business and observed Petitioner looking into the windows of the business and urinating in public. <u>Id</u>. at 41. Officer Simpson testified Petitioner began to walk away when he saw the patrol car. <u>Id</u>. at 47. Officer Simpson testified he was wearing his uniform with visible agency insignia. <u>Id</u>. at 52. Most importantly, Officer Simpson testified that when he attempted to use his radio, Petitioner grabbed the microphone, pulled it off, and it flew

behind the officer. Id. at 60-61. Officer Simpson testified Petitioner said, "Oh, no, you don't." Id. at 61.

In this case, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner committed the offense of depriving an officer of means of communication. This Court must defer to that resolution.

The trial court also instructed the jury,

> As to Count II, before you can find the defendant guilty of depriving an officer of means of protection or communication, the State must prove the following three elements beyond a reasonable doubt: One, Dale L. Williams deprived T. D. Yorton of his radio, a means to defend himself or summon assistance; two, T. D. Yorton was a law enforcement officer; three, Dale. L Williams knew T. D. Yorton was a law enforcement officer.

Ex. C at 267-68.

The record shows Officer Yorton testified he is an officer employed by JSO, and he was in a patrol car with Officer Simpson on July 9, 2010. Ex. B at 102-103. He too testified he saw Petitioner peering into the windows of a building. Id. at 106-107. Officer Yorton testified he saw Petitioner urinating in the grass. Id. at 111. Officer Yorton said Petitioner began to walk away when he saw the patrol vehicle. Id. at 112. Officer Yorton testified that the officers struggled to arrest Petitioner, and when Officer Yorton reached for his radio, Petitioner reached up and grabbed the officer's hand, pulling it away. Id. at 123-24. Officer Yorton managed to provide his call sign and say East First Street, but was

unable to complete the transmission and announce the cross street.
Id. at 124. As a result, the backup patrol officers passed by the
scene. Id. at 124-25.

Examining this evidence in the light most favorable to the
prosecution, a rational trier of fact could have found Petitioner
committed the offense of depriving an officer of means of
communication. Again, the Court must defer to that resolution.

The trial court gave the jury the following instruction:

> As to the Count III, to prove the crime
> of resisting officer with violence, the State
> must prove the following four elements beyond
> a reasonable doubt: One, Dale L. Williams
> knowingly and willfully resisted, obstructed,
> or opposed G. W. Simpson by offering to do him
> violence or doing violence to him; two, at the
> time, G. W. Simpson was engaged in the lawful
> execution of a legal duty; three, at the time
> G. W. Simpson [w]as an officer; four, at the
> time, Dale. L. Williams knew G. W. Simpson was
> an officer.

Ex. C at 268.

The court also instructed:

> As to Count IV, resisting officer with
> violence, the State must prove the following
> four elements beyond a reasonable doubt.
> These are very similar to the instructions I
> gave you as to Count III, and they are
> reprinted in full.
>
> However, these instructions relate to T.
> D. Yorton, whereas, the first set of
> instructions as to Count III relate to Officer
> Simpson. I'm not going to reread them here
> again at this time, but they are reprinted
> here for your convenience, including the
> lesser included crime of resisting an officer
> without violence.

Id. at 269-270.

As noted previously, there was testimony the officers were engaged in the lawful execution of their duties, they were both officers for JSO at the time of the offenses, and by his own testimony, Petitioner knew Officers Simpson and Yorton were police officers. Ex. C at 209-10. The remaining question is whether Petitioner knowingly and willfully resisted, obstructed, or opposed Officers Simpson and Yorton by offering to do them violence or doing violence to them. The jury resolved that question in favor of the prosecution. Although Petitioner denied there was a struggle, except for the officers pinning him to the ground and hitting him, id. at 212, the officers testified there was an extensive struggle between the officers and Petitioner. Ex. B at 53-55, 57-64, 117, 119-21, 123-29. Officers Simpson and Yorton said the exhausting struggle lasted about four minutes. Id. at 64-65, 129. Officer Yorton attested, they were "two officers, neither one of us is a small person, and we were basically in a fight on the ground with the defendant, and we were not winning. We were not getting control of the situation." Id. at 123. Officer Yorton testified he suffered an injury to his left wrist during the struggle. Id. at 130.

Examining the evidence in the light most favorable to the prosecution, a rational trier of fact certainly could have found Petitioner committed the offenses of resisting officers with

violence after considering the testimony of the officers. In this regard, the Court must defer to the resolutions made by the jury.

As required to do, this court presumes that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the state, and upon consideration of that evidence, the Court concludes that the jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the felony offenses beyond a reasonable doubt.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**.

2.    This action is **DISMISSED WITH PREJUDICE**.

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[13]  Because this Court

---

[13] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

   **DONE AND ORDERED** at Jacksonville, Florida, this 24th day of October, 2018.

_____
BRIAN J. DAVIS
United States District Judge

sa 10/16
c:
Dale L. Williams
Counsel of Record